IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID ALLEN, #150171,            )
                                 )
    Plaintiff, Pro Se            )
                                 )
v.                               )        CASE NO. 2:06-CV-1020-T
                                 )
GWENDOLYN MOSLEY, et al.,        )
                                 )
    Defendants.                  )

## SPECIAL REPORT

COME NOW the Defendants, Gwendolyn Mosley, and Jeffery Knox, and hereby submit the following Special Report.

## PARTIES

1.  The Plaintiff, David Allen, is an Alabama Department of Corrections ("ADOC") inmate, who is incarcerated at the Easterling Correctional Facility in Clio, Alabama.

2.  Plaintiff has named the following Defendants:

    a.  Gwendolyn Mosley, who is Correctional Warden III of Easterling Correctional Facility;

    b.  Jeffery Knox, who is Correctional Officer Supervisor II of Easterling Correctional Facility.

## DEFENDANTS' EXHIBITS

In accordance with this Court's Order, the Defendants submit the following exhibit:

1.    Exhibit A – Affidavit of Gwendolyn Mosley (with attachment).

2.    Exhibit B – Affidavit of Jeffery Knox (with attachments).

3.    Exhibit C – Affidavit of Susanne Bush (with attachment).

## NOTICE OF SIMILAR ACTION

In accordance with this Court's Order, the Defendants submit notice that the Plaintiff has not previously filed an action that includes the same or similar allegations.

## PLAINTIFF'S ALLEGATIONS

Plaintiff's claim is based on one alleged incident wherein he claims Captain Knox and two other officers used excessive force against him. (Compl. p. 2 at Section V. and p.3)

## DEFENDANTS' RESPONSE

Defendants respond to the Plaintiff's complaint as follows:

1.    Defendants deny Plaintiff's allegations and demand strict proof thereof.

2.    Defendants deny that any of Plaintiff's constitutional rights have been violated.

3.    Defendant Gwendolyn Mosley cannot be held liable under respondeat superior.

4.    Defendants assert the defenses of sovereign immunity and qualified immunity.

## ARGUMENT OF FACT AND LAW

### I. No Constitutional Violation Of Excessive Force Has Been Alleged

The first step in analyzing the Plaintiff's claim is to identify the specific constitutional provision under which the claim arises. *See Graham vs. Connor,* 490 U.S. 386, 393-94 (1989). In this case the alleged right arises under the "cruel and unusual punishment" provision of the Eighth Amendment because it pertains to the conditions of Plaintiff's confinement. In this regard, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort vs. White,* 813 F.2d 318, 321 (11th Cir. 1987).

To establish an Eighth Amendment claim for excessive force a plaintiff must prove both an objective and subjective component. First, plaintiff must show the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, a plaintiff "must prove that force was applied ... maliciously and sadistically for the

very purpose of causing harm." *Campbell v . S ikes*, 169 F.3d 1353, 1374 (11th Cir.1999)

The Plaintiff's complaint fails to meet the objective components of an Eighth Amendment claim. An excessive force claim "necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Hudson v McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)(quoting *Whitley*, 475 U.S. at 327.) Despite the Plaintiff's protests about the severity of the alleged "beating," the Plaintiff only suffered a minor, and arguably *de minimis*, injury. In fact, the Plaintiff's reported injury appears to be similar to those injuries courts have determined fail to meet the objective standard.[1]

---

[1] Injuries that do NOT support excessive force claims under the Eighth Amendment include: slamming the plaintiff's finger in a cell door causing a laceration, *Johnson v. Moody*, 2006 WL 898135 (S.D. Ala. 2006); lacerations, bruises, cuts, and swelling as a result of a guard hitting a plaintiff's hand with a plastic box when plaintiff reached through a trap in the door of his cell, *White v. Matti*, 2002 WL 31887792 (7th Cir. 2002) (unpublished); bruises on a prisoner's back from being shoved into a door frame, *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000); pain, swelling, and bruising from a guard closing a cuffport door on a prisoner's hand, *Outlaw v. Newkirk*, 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, *Markiewicz v. Washington*, 175 F.3d 1020, (7th Cir. 1999) (unpublished); a sore, bruised ear lasting three days, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); a 1.5 inch scratch on the back of the hand from handcuffs, *Schoka v. Swinney*, 53 F.3d 340, (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994); a sore and swollen thumb from being hit with keys, *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994); a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, *Walker v. Thames*, 2001 WL 394911, *6 (S.D. Ala. 2001); scratches on a plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, *Lanier v .*

By way of a self serving forged copy of a Medical Chart from the Health Care Unit the Plaintiff has dramatically exaggerated the extent of his injury in this case. (Ex. C to the Comp.) Therefore it is important to review the DOC body chart to accurately and objectively consider the extent of the injury alleged. (See Ex.1 to Ex. C) Said chart reveals that the Plaintiff was admitted in *good condition* with a contusion to his left upper eye lid, a laceration behind one of his ears with redness noted a t t wo other areas.( S ee Ex.1 t o E x. A) The Plaintiff did not suffer multiple injuries nor did he suffer any permanent damage. Thus, when compared with the injuries sufficient to meet the objective standard, most of which include multiple blows that caused multiple injuries, the Plaintiff's injury in this case is arguably *de minimis* and thus fails to state a constitutional violation regardless of the subjective intent.

The Plaintiff's allegations also fail to meet the subjective component of an Eighth Amendment claim since they fail to meet the threshold

---

*Fralick*, 2000 WL 1844679, *5-6 (S.D. Ala. 2000); and a blow to the forehead with a baton, resulting in no bruising or swelling, *Clark v. Johnson*, 2000 WL 1568337, *18-19 (S.D. Ala. 2000) (unpublished).

Injuries sufficient to support excessive force claims include: multiple rib fractures, back injuries, lacerations to the scalp, and abdominal injuries requiring hospitalization for nine days and rehabilitation for months, *Skrtich v. Thornton* 2 80 F.3 d 1295, 1302 (11th Cir. 2002); cuts, scrapes and contusions to the face, head, and body from a group beating, *Gomez v. Chandler*, 163 F.3d 921, 925 (5th Cir. 1999); a broken finger, *Escobar v. Zavaras*, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); cuts, bruises, a swollen hand and a possible broken finger, *Mitchell v. Maynard*, 80 F.3 d 1433, 1440-41 (10th Cir. 1996); and permanent scarring and numbness from handcuffs, *Davidson v. Flynn*, 32 F.3d 27, 29 n. 1 (2d Cir. 1994).

showing that force was applied maliciously and sadistically for the very purpose of causing harm. An Eighth Amendment claimant must show more than negligence, more than gross negligence, and even more than deliberate i ndifference. *H udson*, 5 03 U.S. a t 6-7 ( stating e ven a pplication of the deliberate indifference standard is inappropriate in prison cases when officials stand accused of using excessive physical force); *Whitley*, 475 U.S. at 320.

The standard referenced in the preceding paragraph applies in <u>all</u> situations where the decisions of prison officials are typically made "in haste, under pressure, and frequently without the luxury of a second chance," *Hudson v. McMillian*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320). It is clear that in *Hudson v. McMillian*, the Supreme Court extended *Whitley*'s holding to the facts in this case. *See Campbell v. Sikes*, 169 F.3d 1353, 1374-1375 (11th Cir. 1999) (stating that "*Hudson* dictates that *Whitley*'s standard–force applied maliciously and sadistically to cause harm–applies to all claims that prison officials used excessive force against convicted prisoners"). Stated differently under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). In evaluating an officer's

subjective appreciation of the legitimacy of use of force in a given situation, a variety of factors are considered, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, at 7-8, 112 S.Ct. 995; see also *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Inferences may be drawn from these factors as to "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

The Plaintiff's allegations of excessive force cannot withstand any kind of scrutiny. The Plaintiff has produced no evidence about the alleged incident other than his own conclusory allegations, which cannot withstand a motion for summary judgment. See *Larken v Perkins*, 22 Fed.Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment.) *Parker v Woods*, 2006 WL 3421251 (M.D. Ala.) He cannot show, as required, that Captain Knox or anyone else applied force "maliciously and sadistically for the very purpose of causing harm,"

*Hudson v. McMillian*, 503 U.S., 1, 6-7 (1992) (internal quotation marks and citations omitted), or in other words with "a knowing willingness that [harm] occur," *id*., at 6-7; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Moreover, decisions made in response to the Plaintiff's resistance are entitled to a high degree of deference.

Here the Plaintiff claims he was repeatedly beaten and kicked by Captain Knox and two other officers, yet he has dismally failed to submit any credible evidence to substantiate this bogus claim. The Plaintiff would also have one believe that this purported assault occurred without any provocation on his part. Again, he has failed to present any evidence to support his claim. In contrast, the evidence submitted herein by the Defendants shows that the Plaintiff's allegations are without merit and that the Defendants are entitled to a summary judgment in their favor.

The record reflects that on November 7, 2006, Captain Jeffery Knox and The South Central Correctional Emergency Response Team were conducting a search in dormitory #9B-side. (Ex. B) According to the Plaintiff "the riot squad was conducting a m ajor s hakedown" (Comp. p.3) During this shakedown Captain Knox observed that the Plaintiff was in need of a shave and ordered him to shave as soon as the shakedown was over. (Ex B; Comp. p.3). In response to Captain Knox's direct order, the Plaintiff became increasingly argumentative claiming that "I just shaved last night"! (Ex. B). The Plaintiff in fact admits that "I tried to *explain*

*myself* to him" (emphasis added) when Captain Knox asked him why he had
not shaved (Comp. p.3). After becoming increasingly insubordinate, the
Plaintiff refused to comply with Captain Knox's direct order to stand near
the wall (Ex. B). By word and deed the Plaintiff made it clear he intended
to flout Captain Knox's direct commands.

When the Plaintiff flagrantly disregarded Captain Knox's instruction
to stand near the wall Captain Knox reached toward the Plaintiff with his
right hand. (Ex. B) In response, the Plaintiff shoved Captain Knox's hand
away. ( Ex. B ) C aptain Knox t hen grasped the Plaintiff's u pper torso with
both hands. (Ex. B) At this point the Plaintiff began to physically resist
him. (Ex. B)The Plaintiff was placed on the floor by Captain Knox who
then accidentally landed on top of him. ( Ex. A and B).   When Captain
Knox accidentally landed on top of the Plaintiff, the Plaintiff's forehead
struck the floor. ( Ex. A and B.)

The record reflects that Captain Knox acted "in a good-faith effort to
maintain or restore discipline," and not "maliciously or sadistically to
cause harm."   See *Hudson*, 503 U.S. at 7.   Captain Knox used a very
limited amount of force and no more than necessary to regain control of
the situation when the Plaintiff not only refused to comply with his orders,
but also s hoved a t his hand, and b egan p hysically resisting C aptain K nox
in a hostile manner.   In evaluating the challenged conduct of prison
officials, a court must keep in mind the paramount concerns of maintaining

order and discipline in an often dangerous and unruly environment. *Ort v White*, 813 F.2d 318, 322 (11th Cir. 1987). "[I]f force was applied in a good faith effort to maintain discipline, the court should give great deference to acts taken by prison officials in applying prophylactic or preventative measures intended 'to reduce the incidence of riots and other breaches of prison discipline.'" *McBride v Rivers*, 170 Fed.Appx. 648, 656 (11th Cir. 2006) (quoting *Williams v Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991)). While this deference "does not insulate from review actions taken in bad faith or for no legitimate purpose, it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Ort*, 813 F.2d at 322 (quoting *Whitley*, 475 U.S. at 322.)

Clearly, no constitutional violation for excessive force has been alleged. The Plaintiff was out of order, refused to follow instructions, and physically resisted Captain Knox. The amount of force used was inadvertent and justified under the circumstances given the Plaintiff's escalating resistance. *E.g. Skritch v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Moreover where the only questions concern the reasonableness of the force used by a prison official, the defendant will ordinarily be entitled to judgment as a matter of law. *See Campbell v Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (explaining that "force does not violate the Eighth Amendment merely

because it is unreasonable or unnecessary")' *McBride*, 170 Fed.Appx. at 647 (although correctional officers could arguably have used less force after subduing inmate, inmate "failed to produce evidence showing that these measures were taken 'maliciously and sadistically for the very purpose of causing harm.'") (citations omitted).

## II. Defendants Cannot Be Liable Based On Supervisory Status.

Another ground supporting a summary judgment in favor of Gwendolyn Mosley is the lack of respondeat superior liability in section 1983 cases. Because Warden Mosley has no personal knowledge regarding the alleged incident upon which the Plaintiff's complaint is based, the Plaintiff may be attempting to hold her liable based of the status of her position. To the extent Plaintiff seeks to hold Warden Mosley liable because of her supervisory status, his claims must be dismissed as there is no respondeat superior liability in section 1983 cases. *Dean v. Barber*, 951 F.2d 1210 (11th Cir. 1992).

## III. Defendants Should Be Granted Summary Judgment On The Grounds Of Immunity

In addition, the Defendants are entitled to a summary judgment on the ground of immunity. The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Eleventh Amendment bars suits against a State by that state's own citizenry. *See E delman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974) and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L. Ed. 842 (1890).

It has been well established that, even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment. *See Pennhurst State S chool & Hospital v. H alderman*, 465 U.S. 89, 101-02, 104 S. Ct. 900, 908-09, 79 L. Ed. 2d 67 (1984). "For example, if a lawsuit seeks to order the state officer to pay funds directly from the state treasury for the wrongful acts of the state, then the state is the real party in interest and the Eleventh Amendment bars the suit." *Summit Medical Associates, P.C. v. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999). This suit is in reality a suit against the State, because the Defendants are being sued in their official capacity as employees of the State of Alabama. Thus, the Defendants are absolutely immune from suit, because any award of injunctive relief would require expenditures by the State.

Clearly under the facts of this case the Defendants are protected from an award of damages by qualified immunity. As stated by the Eleventh Circuit, "[q]ualified immunity protects government officials from civil trials and liability

when their conduct in performing discretionary functions 'violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th Cir. 1998), quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc). Because the alleged acts of the Defendants consist of discretionary functions and because the actions do not violate any clearly established constitutional or statutory rights, the Defendants are protected by qualified immunity. *See Wilson*, 163 F.3d at 1295 (holding that the marshal, wardens, and corrections officer were protected by qualified immunity); *Pinkney v. Davis*, 952 F. Supp. 1561 (M.D. Ala. 1997) (holding that wardens, deputy warden, and other prison officials were entitled to qualified immunity concerning medical treatment of inmates). The Eleventh Circuit has held that "[p]rison officials have 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Wilson*, 163 F.3d at 1295; *Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11 Cir. 1999)   Thus, the Defendants are entitled to qualified immunity with regard to the Plaintiff's request for monetary damages.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that this Honorable Court enter a summary judgment in their favor.

RESPECTFULLY SUBMITTED,

TROY KING
ATTORNEY GENERAL


MARY GOLDTHWAITE (GOL013)
ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 353-9189
(334) 242-2433 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on the following persons, by placing same in the United States Mail, postage prepaid, on this the 27th day of December, 2006.

> David Allen, #150171
> Easterling Correctional Facility
> 200 Wallace Drive
> Clio, AL 36107

OF COUNSEL

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID ALLEN, #150171          )
    Plaintiff,              )
                            )
VS.                           )
                            )    CIVIL ACTION NO. 2:06-CV-1020-T
                            )
GWENDOLYN MOSLEY, et.al.       )
    Defendant.              )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared <u>Gwendolyn C. Mosley</u>, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is <u>Gwendolyn C. Mosley,</u> and I am presently employed as <u>Correctional Warden III</u>, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

Inmate David Allen, #150171, was assigned to Easterling Correctional Facility on June 27, 2002. Inmate Allen's allegations that Captain Jeffery Knox and several other South Central Correctional Emergency Response Team members repeatedly beat him and kicked him in the head, ribs, and back is untrue. According to Captain Jeffery Knox, on November 7, 2006, Captain Knox and the CERT Team were conducting a search of Dormitory 9 B-Side. Captain Knox ordered inmate Allen to get a shave after the shakedown was completed. Inmate Allen became argumentative toward Captain Knox and stated, "I just shaved last night", and began walking away. Captain Knox instructed inmate Allen to stand near the wall. Inmate Allen did not comply with Captain Knox's instructions. Captain Knox reached to grasp inmate Allen with his hand. Inmate Allen pushed Captain Knox's hand. Captain Knox grasped inmate Allen's upper torso. Inmate Allen began to resist. Inmate Allen was then placed on the floor by Captain Knox. Captain Knox accidentally landed on top of inmate Allen. Inmate Allen's left side forehead struck the floor. Inmate Allen's Exhibit "C" is a forged copy of Medical Chart from the Health Care Unit and is untrue. Inmate Allen was escorted to the Health Care Unit and examined by Nurse Susie Bush (Exb. #1 – Original Medical Chart).

EXHIBIT
A
PENGAD 800-631-6989

Affidavit – Gwendolyn C. Mosley
Civil Action – 2:06-1020-T
Page 2

I have seen no evidence to support inmate Allen's allegations that he received unwarranted treatment by Captain Knox or any other officers.

I have seen no evidence that inmate Allen's constitutional rights have been violated.

_Gwendly C. Mosley_
Gwendolyn C. Mosley

SWORN TO AND SUBSCRIBED TO before me this the ___6th___ day of
___December___, 2006.

_Linda E. Teal_
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

PHS

# EMERGENCY

| MISSION DATE | TIME | ORIGINATING FACILITY _Easterling_ | □ SICK CALL □ EMERGENCY |
|---|---|---|---|
| 11/7/06 | 910 AM/PM | □ SIR □ PDL □ ESCAPEE □ | ☒ OUTPATIENT |

**ERGIES** PCU     **WT** .

CONDITION ON ADMISSION
☒ GOOD □ FAIR □ POOR □ SHOCK □ HEMORRHAGE □ COMA

AL SIGNS: TEMP 978   ORAL RECTAL   RESP. 20   PULSE 98   B/P 140/90   RECHECK IF SYSTOLIC <100> 50 ___/___

TURE OF INJURY OR ILLNESS
S-DOC

O2 Sat 9790

| | ABRASION /// | CONTUSION # | BURN xx xx | FRACTURE Z Z | LACERATION / ___ SUTURES |
|---|---|---|---|---|---|

contusion

redness

PROFILE RIGHT OR LEFT

redness    redness

RIGHT OR LEFT

HYSICAL EXAMINATION
O - B/m Amb. to NCU c̄
steady gait - for DOC
body chart Redness noted
to ⒧ side of lower
back, et ⒧ side of
upper chest contusion
noted to ⒧ upper
eye lid. laceration
approx. 1½" long noted
behind ® ear lobe
slight bleeding noted.
PERRAL noted c/o HA

IAGNOSIS Denies any N/V - NAD noted. Tylenol 1gm po
given

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Cleaned c̄ NS | | |
| Dressing applied. | | |
| To see MD for | | |
| eval. | | |
| Placed in observation | | |
| cell until seen - | | |

v/o Dr. Osborne / S Busker

STRUCTIONS TO PATIENT

| ISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO □ DOC | CONDITION ON DISCHARGE |
|---|---|---|---|
| 11/7/06 | 1215 AM/PM | □ AMBULANCE □ | ☒ SATISFACTORY □ POOR □ FAIR □ CRITICAL |

| URSE'S SIGNATURE | DATE | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |
|---|---|---|---|---|
| S Baugh LPN | 11/7 | | 11/7/06 | |

| NMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| Allen David | 150171 | 11/30/55 | B/m | ECF |

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID ALLEN, #150171         )
    Plaintiff,             )
                         )
VS.                    )
                         )     CIVIL ACTION NO. 2:06-CV-1020-T
                         )
GWENDOLYN MOSLEY, et.al.    )
    Defendant.           )

## AFFIDAVIT

Alabama at Large, personally appeared Jeffery Knox, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Jeffery Knox, and I am presently employed as Correctional Officer Supervisor II, employed by the Department of Corrections, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

On November 7, 2006, I, Captain Jeffery Knox, and The South Central Correctional Emergency Response Team were conducting a search in dormitory #9 B-side, (Exb #1). I observed inmate David Allen, B/M # 150171 enter the dorm, inmate Allen was in need of a shave. I ordered inmate Allen to shave as soon as the shakedown was completed. Inmate Allen became argumentative and stated "I just shaved last night"! Inmate Allen continued to talk and began to walk away. I instructed inmate Allen to stand near the wall. Inmate Allen did not comply with the order. I reached with my right hand; inmate Allen pushed my hand. I then grasped inmate Allen's upper torso with both hands. Inmate Allen started to physically resist. I then placed inmate Allen on the floor. While inmate Allen was being placed on the floor I landed on top of inmate Allen, and the left side of inmate Allen's forehead struck the floor. Inmate Allen's exhibit "C" is a forged copy of the original copy from the medical examination and it is untrue. See original medical chart (Exb.2). Inmate Allen's allegations that several members of the CERT Team physically abused him are untrue. Inmate Allen's allegation that he was kicked is untrue.

Inmate Allen's Constitutional Rights have not been violated.



EXHIBIT
B

Affidavit – Jeffery Knox
Civil Action – 2:06-1020-T
Page 2


_____
JEFFERY KNOX


SWORN TO AND SUBSCRIBED TO before me this the ___6th___ day of
___December___, 2006.

_____
NOTARY PUBLIC

My Commission Expires: ___7-15-07___

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution: **Easterling Correctional Facility** | 2. Date: **November 7, 2006** | 3. Time: **9:00 AM** | 4. Incident Number: **ECF 06-\200** | Class Code: **B** |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: **Dormitory #9, B-Side** | 6. Type of Incident: **RV#56-Failure To Obey A Direct Order of An ADOC Official  (Use of Force)** |
|---|---|

| 7. Time Incident Reported: **11:40 AM** | 8. Who Received Report: **Carter F. Davenport, Warden II** |
|---|---|

**9. Victims:**        Name        AIS

| a. | N/A | No. | N/A |
|---|---|---|---|
| b. | | No. | |
| c. | | No. | |

**10. Suspects:**    Name        AIS

| a. | Allen, David | No. | B/M 150171 |
|---|---|---|---|
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |

**11. Witnesses:**    Name        AIS

| a. | N/A | No. | N/A |
|---|---|---|---|
| b. | | No. | |
| c. | | No. | |
| d. | | No. | |
| e. | | No. | |
| f. | | No. | |
| g. | | No. | |

**PHYSICAL EVIDENCE:**

**12. Type of Evidence**

N/A

**13. Description of Evidence:**

N/A

**14. Chain of Evidence:**

a. N/A
b.
c.
d.
e.

**15. Narrative Summary:**

On November 7, 2006, at approximately 9:00 AM, Captain Jeffery Knox and the Southern Central and South Central Correctional Emergency Response Teams were conducting a search in Dormitory #9, B-Side. At approximately 9:05 AM, Captain Knox observed Inmate Allen, David, B/M 150171, enter the dorm. At approximately 9:05 AM, Captain Knox ordered Inmate Allen to shave as soon as the shakedown was completed. Inmate Allen became argumentative and stated, "I just shaved last night!" Inmate Allen continued to talk and began to walk away. Captain Knox instructed Inmate Allen to stop and stand near the wall. Inmate Allen stopped walking. Captain Knox ordered Inmate Allen to stand near the wall. Inmate Allen did not comply to the order. Captain Knox reached with his right hand. Inmate Allen pushed Captain Knox's hand. Captain Knox grasped Inmate Allen's upper torso with both hands. Inmate Allen began to physically resist. Captain Knox wrestled Inmate Allen to the floor. Captain Knox landed on top of Inmate Allen and the left side of Inmate Allen's forehead struck the floor. Inmate Allen stopped resisting. Officer Larry McCovery placed a pair of handcuffs on Inmate Allen. At approximately 9:10 AM, Sgt. Phelix Woods and Officer Kenneth Drake escorted Inmate Allen to the Health Care Unit. Nurse Susie Bush examined Inmate Allen (see attached Medical Chart). At approximately 11:40 AM, Captain Knox reported the incident to Warden Carter F. Davenport. At approximately 11:50 AM, Captain Knox reported to the Health Care Unit (see attached Medical Chart). At approximately 11:55 AM, Captain Knox resumed his duties. At approximately 12:15 PM, Inmate Allen was released from the Health Care Unit and escorted to Administrative Segregation pending disciplinary action for violation of Rule #56-Failure To Obey A Direct Order of An ADOC Official. No further action taken. See attached Duty Officer Report.

Jeffery Knox, COSII

| Distribution: | ORIGINAL AND ONE (1) COPY to Central I & I Division<br>COPY to Institutional File | COPY to Deputy Commissioner of Operations (Class A and B ONLY)<br>COPY to Central Records Office |
|---|---|---|

ADOC Form 302-A – June 1, 2005



**PHS**
PRISON HEALTH SERVICES INCORPORATED

## EMERGENCY

Easterling

| ADMISSION DATE 11/7/06 | TIME 910 AM/PM | ORIGINATING FACILITY ☐ SIR ☐ PDL ☐ ESCAPEE ☐ | ☐ SICK CALL ☐ EMERGENCY ☒ OUTPATIENT |
|---|---|---|---|

| ALLERGIES PCN    NKA | CONDITION ON ADMISSION ☒ GOOD ☐ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |
|---|---|

VITAL SIGNS: TEMP 978 ORAL/RECTAL   RESP. 20   PULSE 98   B/P 140/90   RECHECK IF SYSTOLIC <100> 50 ____ / ____

NATURE OF INJURY OR ILLNESS
S-DOC

O2 Sat 97%

| | ABRASION /// | CONTUSION # | BURN xx/xx | FRACTURE Z | LACERATION / ____ SUTURES |
|---|---|---|---|---|---|

contusion

redness

PROFILE RIGHT OR LEFT

redness

RIGHT OR LEFT

PHYSICAL EXAMINATION
O - B/m Amb. to NCU c̄
steady gait - for DOC
body chart. Redness noted
to (L) side of lower
back, et (L) side of
upper chest. Contusion
unoted to (L) upper
eye lid. laceration
approx. 1½" long noted
behind (R) ear lobe
Slight bleeding noted.
PERRAL noted c/o HA

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Cleaned c̄ NS | | |
| Dressing applied. | | |
| To see MD for | | |
| eval. | | |
| Placed in Observation | | |
| cell until seen - | | |

DIAGNOSIS  Denies any N/V - NAD noted. Tylenol 1gm po given

INSTRUCTIONS TO PATIENT
v/o Dr. Darbouze / S Bush RN -

| DISCHARGE DATE 11/7/06 | TIME 1215 AM/PM | RELEASE / TRANSFERRED TO ☐ DOC ☐ AMBULANCE | CONDITION ON DISCHARGE ☒ SATISFACTORY ☐ POOR ☐ FAIR ☐ CRITICAL |
|---|---|---|---|

| NURSE'S SIGNATURE S Bush LPN | DATE 11/7 | PHYSICIAN'S SIGNATURE | DATE 11/7/06 | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) Allen David | DOC# 150171 | DOB 11/30/55 | R/S B/m | FAC. ECF |
|---|---|---|---|---|

PHS-MD-70007          **(White – Record Copy, Yellow – Pharmacy Copy)**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID ALLEN, #150171          )
    Plaintiff,              )
                              )
VS.                           )
                              )          CIVIL ACTION NO. 2:06-CV-1020-T
                              )
GWENDOLYN MOSLEY, et.al.       )
    Defendant.             )

## AFFIDAVIT

Before me, the undersigned authority, a Notary Public in and for said County and State of Alabama at Large, personally appeared Susanne Bush, who being known to me and being by me duly sworn, deposes and says under oath as follows:

My name is Susanne Bush, and I am presently employed as an LPN, employed by the Prison Health Services, Easterling Correctional Facility, 200 Wallace Dr., Clio, Alabama, 36017. I am over twenty-one (21) years of age.

I, Susanne Bush, LPN completed a DOC body chart on November 7, 2006 at 9:10a.m. on inmate David Allen AIS#150171 (Exb. #1). He was released to DOC at 12:15 p.m. after being evaluated per M.D. The document labeled "exhibit C" is not my documentation or signature.

*Susanne Bush*
SUSANNE BUSH


SWORN TO AND SUBSCRIBED TO before me this the ___6th___ day of
__December__, 2006.

*Linda E. Teal*
NOTARY PUBLIC

My Commission Expires: ___7-15-07___


EXHIBIT
C

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# EMERGENCY

| ADMISSION DATE | TIME | ORIGINATING FACILITY _Easterling_ | |
|---|---|---|---|
| 11/7/06 | 910 ☑AM ☐PM | ☐SIR ☐PDL ☐ESCAPEE ☐ | ☐SICK CALL ☐EMERGENCY ☑OUTPATIENT |

ALLERGIES  PCU    Wt.

| CONDITION ON ADMISSION | ☑GOOD ☐FAIR ☐POOR ☐SHOCK ☐HEMORRHAGE ☐COMA |

VITAL SIGNS: TEMP 97⁸  ORAL/RECTAL   RESP. 20   PULSE 98   B/P 140/90   RECHECK IF SYSTOLIC <100> 50   /

NATURE OF INJURY OR ILLNESS

S-DOC

O2 Sat 97⁹0

| ABRASION /// | CONTUSION # | BURN ˣˣ ˣˣ | FRACTURE ᶻᶻ | LACERATION / ___ SUTURES |
|---|---|---|---|---|

contusion

redness

PROFILE RIGHT OR LEFT

painful

RIGHT OR LEFT

PHYSICAL EXAMINATION

O - Blm Amb. to NCU c̄
Steady gait- for DOC
Body Part Redness noted
to (L) side of lower
back, et (L) side of
upper Chest, Contusion
noted to (L) upper
eyelid. laceration
approx. 1½" long noted
behind (R) ear lobe
slight bleeding noted
REFERRAL noted c/o HA

DIAGNOSIS Denies any N/V - NAD noted.

INSTRUCTIONS TO PATIENT

| ORDERS / MEDICATIONS / IV FLUIDS | TIME | BY |
|---|---|---|
| Cleaned c̄ NS | | |
| Dressing applied. | | |
| To see MD for | | |
| Eval. | | |
| Placed in observation | | |
| cell until seen - | | |
| Tylenol 1gm po given | | |
| v/o Dr. Darbouze / S.Bushra | | |

| DISCHARGE DATE | TIME | RELEASE / TRANSFERRED TO | CONDITION ON DISCHARGE | |
|---|---|---|---|---|
| 11/7/06 | 1215 ☑AM ☐PM | ☐DOC ☐AMBULANCE ☐ | ☑SATISFACTORY ☐FAIR | ☐POOR ☐CRITICAL |

| NURSE'S SIGNATURE S.Bushra LPN | DATE 11/7 | PHYSICIAN'S SIGNATURE | DATE 4/7/06 | CONSULTATION |
|---|---|---|---|---|

| INMATE NAME (LAST, FIRST, MIDDLE) | DOC# | DOB | R/S | FAC. |
|---|---|---|---|---|
| | 150171 | 11/30/65 | Blm | Ecc |